Good morning. May it please the court, my name is Sarah Peters and I represent the appellants. May I reserve five minutes for rebuttal, please? Here the plaintiff's claims fall within the government's waiver of sovereign immunity and the misrepresentation exception does not apply for two independent and independently sufficient reasons. First, because the exception only applies to the traditional tort of misrepresentation under the original intent of the FTCA as recognized by the United States Supreme Court and because plaintiff's claim here is not one for the tort of misrepresentation since it does not involve the essential element of reliance by the plaintiffs. That alone is a reason to find that the misrepresentation exception does not apply. And then the second independently sufficient reason that the misrepresentation exception does not apply is because in enacting section 120H of CERCLA, Congress suspended or limited the application of that exception by recognizing a specific duty on the part of the government to make disclosures that are mandatory and specific and intended to the statute. So, turning to the first argument, the absence of reliance by the plaintiff. Congress's original intent, as interpreted by the United States Supreme Court, was that the misrepresentation exception would apply to the, quote, traditional and commonly understood legal definition of the tort of negligent misrepresentation, end quote. And that's from the Neustadt case, U.S. Supreme Court, at pages 706 to 707. So, in other words, as was recognized by the First Circuit, then Judge Breyer and Jimenez Nieves, the exception does not apply to false statements that are just merely causal elements of other torts. Rather, it only applies to the tort of misrepresentation, which necessarily involves the essential elements of a violation of the duty to use due care in gathering information and communicating information and involves the essential element of reliance by the plaintiff. What do we do with the text of the statute, 26ADH, which says it's arising out of dot, dot, dot, misrepresentation? Wouldn't that be, suggest a broader reading? I think not. Under the Neustadt case, the U.S. Supreme Court considered and stated expressly that this was not just the word misrepresentation or the word deceit, but that by using that term misrepresentation in that exception, Congress specifically was referring to that traditional tort. So I think there the Supreme Court has bindingly recognized to the contrary that it's a tort. That decision, Supreme Court decision, didn't really address the arising out of language. I mean, it mainly relied on legislative history. I think, you know, we focus now more on the text and didn't really address that. So what do we do with that? I mean, do we just ignore it? Because it's right there. It says arising out of, you know, misrepresentation, et cetera. That's the question I'm struggling with. What do we do with that statutory language? Yeah, I guess to me that seems reconcilable with what Neustadt, the Supreme Court, was finding, in that it's a riot the tort is arising out of a misrepresentation as defined by each of its elements. In other words, it's not just a misrepresentation that's embedded in the conduct somewhere, which is a mere causal element of the tort, but to say arising out of means arising out of that tort with each of its elements, including the essential element of reliance. It seems that, I don't know, I mean, I'm struggling with this a little bit, not just because of the text, but also because I don't know that Neustadt was really about this particular question we're talking about. It seems like there's a whole lot of cases that are trying to get at the question of what is the conduct being complained of and is the gravamen of that conduct really a misrepresentation or something else? In some cases, it's something else. Here, it does seem like the gravamen and the misconduct is a misrepresentation. That's the bad conduct, but there is a more technical argument to say, well, but it has to be against my clients as opposed to a third party. I don't know that Neustadt really gets at that issue. I'm not sure anybody's really got at that issue other than maybe the Eleventh Circuit. I think you're right, Your Honor, that Neustadt isn't grappling with that issue in particular, but Neustadt, I think, is the place to start because it recognizes that this is a reference to the tort of misrepresentation as opposed to just the word. And then Jimenez-Nieves out of the First Circuit, as well as both the Fifth Circuit and Tenth Circuit, have each analyzed this in depth. And really, it is a matter of first impression in the Ninth Circuit. There's no other binding or persuasive circuit opinion sided by either side. So I think we really have those three cases to look to out of the First, Fifth, and Tenth as the deepest dive, where then Judge Breyer is saying it would, you know, as we go through the traditional tort elements of misrepresentation, they do involve reliance. And it's not a technicality, but rather that tort is one that is defined by detrimental reliance. And the original intent of this statute was to get at and exclude that tort, as opposed to bizarre outcomes, as the court referenced there. For example, if somebody were driving next to a co-worker in a government truck, and the co-worker said, stop, you know, stop at the red light. Okay, light's green, go. And that individual then struck somebody. That tort would involve a misrepresentation as one of its causal elements, but it would not be the tort of misrepresentation. Is that more getting at because the conduct that we're talking about is not, you know, the real thing you're complaining about is not a misrepresentation? Because that's where I'm getting hung up a little bit, because a lot of the cases involve that, to say, well, you're talking about negligent driving versus a misstatement, and here that claim is really more about negligent driving and not about what somebody said. Here it is about what somebody said, and we're trying to say, well, yes, but you said it to the wrong, you said it to a different person, not to me, and that's the distinction. Well, the injury to the plaintiffs is not caused by their reliance on a misrepresentation, but rather by a property transaction. So the plaintiffs here, the current and former employees of the San Francisco Police Department, who were stationed out at the shipyard by virtue of this lease, they were injured, physically injured, by a property transaction that resulted in them being stationed there. That property transaction came about through misrepresentations by the United States Navy to the city of San Francisco, but that's not the tort, since it was not the plaintiffs relying on those representations that led to their injury. I didn't understand your opening brief, or to be arguing that this wasn't really a misrepresentation case at all. I thought this really was a misrepresentation case. I guess that might be a little bit ambiguous. So we're saying there very much was a misrepresentation, and we're not saying that that misrepresentation was off to the side, or collateral, or that had little to do with this, but we're saying it's not a misrepresentation claim in the sense of the traditional tort of misrepresentation. Right, but the conduct, the thing that's allegedly wrongful is the misrepresentation, is the misstatements, what was said. That's correct. I mean, it involves, of course, the negligence in gathering data, the negligence in the investigation, but ultimately, the tort was very much about a misrepresentation. But all six claims were dismissed, right? Or we're not talking about just a misrepresentation claim. There was also the negligent supervision claim, and the negligent supervision arises before there even is a misrepresentation. The injury in that claim would be caused by the lack of decontamination, but that was also dismissed as being all part of the misrepresentation. Do you agree with that, or do you think that should have been carved off and survived? I agree, and I think that's very insightful, Your Honor, that there were particular claims with regard to the negligent supervision that had nothing to do with the misrepresentation. That said, the upstream conduct that led to the majority of our plaintiff's harm was that decision, the property transaction that led to them being stationed there, and so we're very much here to fight for the reversal of that sovereign immunity decision with respect to, you know, there is a subset of the claims that should not have been dismissed in either event, but the larger portion of our claims relate to that original property transaction. What do we do with our decision in Alexander? I mean, clearly, in the facts of the case, there was no direct reliance, but we still said the exception applies. Yeah, so where, you know, where the facts are lurking in the record that are not directly addressed by the court? But the fact wasn't lurking. This is one of the critical facts in that case. It's not some extraneous fact, and it was very central to it, and the court there seemed to offer a rationale why it includes it. Maybe it didn't say so expressly, but it did say the exception should be read broadly, and therefore, it encompasses this. So, I mean, what do we do with that? Yeah, I think even though those facts were directly stated as being the facts of the case, under the Curulic Ninth Circuit decision, which says — which draws a distinction between precedential and non-precedential analysis, there, the distinction is whether the facts were actually brought to the attention of the court and ruled upon or whether they were merely lurking in the record. And so I think under that distinction, those facts were — they were certainly there. They were certainly recognized as being the facts by the court, but they weren't addressed or analyzed, and there's no evidence that the plaintiffs there raised the argument that we're raising here. So there's no evidence that the court actually considered or analyzed that. Therefore, it's our position that decision is non-precedential. Are you going to talk about the circlist side of the House? Yes. Okay. Yes, Your Honor. So moving to the second independent argument, which is that Section 120H limits or suspends the application of the misrepresentation exception, really the question there is whether the — whether Congress, in enacting that statute, recognized a specific duty which would then limit or suspend the application of the misrepresentation exception. Newstad and Zurn Industries are two cases which came to the opposite conclusion of the one that we're arguing for here, but which went through the analytical factors and really looked at what is the primary objective of the statute on the one hand, and also does this statute recognize a specific duty or an obligation? Does it make some guarantee to some group of people? And whereas in those cases, the answers to both of those questions were in the negative, that there was no — that the primary objective of the statute did not relate to the rights of the plaintiffs there, and also that there was no recognition of a specific duty, here the opposite is true. Here Section 120H is one that actually includes the language, a covenant warranting that this is a specific duty to provide specific information, which the Ninth Circuit has recognized that the congressional intent was to protect public health through those provisions. Has any court addressed this issue, whether CERCLA is essentially a carve-out to the exception? No, Your Honor. Not under the — not under the FTCA. Okay. Has any court found that any statute is an exception to this misrepresentation exception? Not to my knowledge. So there were no cases that were on point here, which found in the same way that we're asking the court to find. But the analyses by Newstad, U.S. Supreme Court decision, and the analysis by the Garland case — or Zorn Industries, rather — are analyses that go through. These are the elements that are looked to to determine whether there is a congressional intent. And I think, you know, it's not often that parties agree, but here there's agreement that under certain circumstances, Congress can limit or suspend the application of the misrepresentation exception. That's certainly recognized by the courts in Zorn Industries and the court in Newstad and acknowledged by the parties. And so really the question is just, are those factors present here or not? But in CERCLA, Congress already waived sovereign immunity to some extent, and that they could — you could file remediation lawsuits against the United States. So there's an express waiver of sovereign immunity, at least for remediation. So then we're supposed to presume that it then implicitly waived tort claims in CERCLA. Just seems odd that it expressly waived sovereign immunity for certain remediation costs, but then we're supposed to infer that they implicitly waived it. I would — I think it's a little bit different, Your Honor. I think that those express creations of rights of action are not the same thing as an express waiver of sovereign immunity, but rather under the Tucker Act, for example, there have to be — you know, there needs to be an explicit creation of a monetary right of action. And so there are certain places where we have that express creation of a right of action, but that's different than recognizing a specific duty, which is under Newstad and Zurn Industries, that's what's required in order to say, Congress here is recognizing a specific duty that — or a guarantee, an obligation that runs to a group of people. And so that means that they're limiting or suspending the application of the misrepresentation exception. That was the analytic framework in Newstad and in Zurn Industries. So if, you know, applied here, it would come to the opposite end of the issue. It seems odd. You know, FTCA isn't an obscure statute that Congress wouldn't be aware of. You know, it's not like the Longshoreman Act, which I know is our next case, which is — maybe congressional members may not be aware of the details, but FTCA is very prominent if you're serving in Congress and to — for us to infer that Congress, you know, create this way of sovereign immunity and got rid of that exception seems like a bit of a stretch. And I think we should infer, the court should infer, that they were aware of the FTCA. And that was indeed what the court stated in both Newstad and Zurn Industries, that Congress is presumed to have been aware of the FTCA. I think the court should do the same here. But it was in that context that those courts said that this was the analytic framework that should be followed. And so we would just urge the court to follow the same analytic framework, not to depart from it, but to come to the opposite conclusion, because the facts here, the statute here, is so different. And with that, may I reserve the remainder of my time? Thank you. Your Honors, and may it please the court, my name is Albert Lai on behalf of the United States, the appellee defendant in this matter. Case law from this circuit and from the Supreme Court determined the outcome of this case. Plaintiff appellants do not contest that their claims are, in fact, grounded in misrepresentation. And as a result, the FTCA's misrepresentation exception does apply. What plaintiff appellants are arguing for on appeal are exceptions to the misrepresentation exception. First, they're arguing that the exception should not apply in cases of third-party reliance. That is, where a party other than the plaintiff relied upon the misrepresentation. Are they exceptions or essential elements? Doesn't Newstanton Blocks say that detrimental reliance is an essential element of the misrepresentation exception? No, Your Honor. The terms of the statute itself is withdrawing sovereign, or rather, withdrawing the waiver of sovereign immunity for any claim arising out of misrepresentation. And as this Court has said in cases like Alexander and other decisions, what matters is the substance of the claims and not how the plaintiff has chosen to style their claims. Here, the substance of the claim is misrepresentation by the United States Navy. And as you heard now, plaintiff appellants do not contest that here at all on appeal. And so the exception presumptively applies. This Court has also applied the misrepresentation exception on multiple occasions to cases of third-party reliance. In Andrade, this Court explicitly rejected the argument that plaintiff appellants make now and stated that, again, it's the gravamen of the claim that matters. And Andrade also noted that its holding flowed naturally from Alexander, another case of third-party reliance. Lawrence is another example of third-party reliance where this Court applied the misrepresentation exception. In response to these Ninth Circuit cases, plaintiff appellants cite a series of out-of-circuit decisions and district court cases from other circuits. But the cases that they cite are not even about third-party reliance. They are about what constitutes a misrepresentation claim. As Judge Brest, you pointed out earlier, in the First Circuit decision of Jimenez-Nieves decided in 1982, there the issue was a typographical error on a check provided by the Social Security Administration. And ultimately, what the Court was grappling with was whether that constituted misrepresentation at all. And we see that in the hypothetical that the First Circuit posed and which plaintiff appellants cited in their briefing, in their opening brief, their reply brief, and here again before you. The hypothetical is what would happen if a government truck driver crossed a red light because their co-worker told them the light was green? Well, that's a hypothetical about is that really misrepresentation or is that just negligent operation of the truck because the driver didn't look at the light themselves? Here that's not even the issue at play. But here plaintiff appellants have admitted their claims are grounded in misrepresentation. We see the same theme running through the rest of the cases that plaintiff appellants cite. In Serra Partnership decided by the Fifth Circuit in 1995, that was another case of a typographical error on mortgage coupon payments which prevented the plaintiff from paying their mortgage. There, the Fifth Circuit again decided, well, that wasn't a claim of misrepresentation. That was just negligent processing of a mortgage. But do you agree that under traditional misrepresentation claim, common law claim at the time the FTCA was enacted, it didn't allow third party reliance? Your Honor, I don't think the FTCA spoke to that because the FTCA was designed as a It's more of potentially new state, but do you agree that at the time the misrepresentation claim does not allow third party reliance? Well, that's where the FTCA depends. The FTCA was intended to incorporate state tort law into as an aspect of the waiver of sovereign immunity. So it has to be cognizable as a claim under state law to begin with. And so here we're not even addressing that point yet. We're just addressing this exception and whether it would apply if the gravamen of the case is for misrepresentation. I know there are different ways to analyze it, but I'm just trying to confirm, do you agree that third party reliance isn't cognizable under traditional misrepresentation claim? Yes. If we look at the restatement of law, you know, very general, basic, traditional third party reliance would not make for misrepresentation claim unless I believe there was some sort of special relationship. So your argument is, you know, obviously, you know, your friend on the other side is saying we have to look at what the common law was. So your argument is based more on you have to look at the gravamen of it. Is that your argument? Yes, Your Honor. If the entire case is based on misrepresentation and that is what caused the tort and what caused the injury, then the case is barred by the misrepresentation exception. What do we do if, you know, some of the language, again, these cases a little bit, these vague language that says, well, we look at kind of what the traditional tort was, the elements of it. What do we do with that language? Well, those decisions are coming from cases that, again, are not addressing this issue of third party reliance. They're coming from cases like Neustadt where this wasn't an issue. It's coming from cases like Jimenez Neves, which again, the core issue there was what is a misrepresentation claim and not what falls under the misrepresentation exception really. And we see this theme continuing through the rest of the cases that plaintiff appellants are citing. So what cases have actually addressed this question in your view? So I have found two, Your Honor. Both are from the Fifth Circuit. One is Williamson versus the United States, decided in 1987. There, there was a misrepresentation made by the government to a farmer plaintiff's landlord and again, the misrepresentation exception applied. And I can provide the pin site for that as well. That's 815 F2D 368. The other one is Barone versus United States. That was also decided by the Fifth Circuit in 1981. There misrepresentations were made to developers as opposed to the plaintiff homeowners or I believe tenants and the misrepresentation exception applied. And in fact, the Fifth Circuit said, in that case, either the misrepresentation exception applies or there's just no tort claim cognizable here under state tort law. And these are decisions that plaintiff... Did either of these cases really grapple with this, this legal issue beyond just simply applying the exception in the way that you want it? Barone does explicitly address the issue of third party reliance and it applied the misrepresentation exception. But Your Honor, I don't believe that it's necessary to look outside the circuit. Lawrence, Alexander and Andrade are all cases where there are third party reliance and this court applied the misrepresentation exception in each of those cases. That's true. I don't know, though, how how reasoned those words, certainly the outcomes of those cases support you. But in terms of whether they're binding on us in the sense that they actually went through this issue that we're now debating, I don't know about that. Well, Andrade explicitly addressed it, and I understand that is a a memorandum opinion, so it's not precedential. But memorandum opinions do reflect established law in this circuit. And Andrade pointed out, citing Alexander, this is a natural reading of Alexander. So I think those cases alone are enough to affirm the district court's decision on this point. What else is out there? You didn't mention the 11th Circuit in J.B.P. Does that is that supportive of your position? I'm not familiar with that decision. OK, but what do we do with the arising out of language in the statute? So, as you mentioned earlier, Your Honor, I think the arising out of language is can be read in a couple of ways. One is that it's as this circuit has said on a number of occasions, including in Alexander, courts should not be reading a complaint. Courts should be reading a complaint to see what the substance of the claims are. It's not about how a plaintiff chooses to style their claims. It's about really what is the gravamen of the case. And here, the gravamen of the case are misrepresentations made, allegedly made by the U.S. Navy. And I'll also turn for a moment to address an earlier question from Judge Navarro. Thank you. I was going to ask you if you didn't. About negligent supervision. Well, if we look to the complaint itself, although the words negligent supervision are used, the claim is, again, grounded in misrepresentation because here the allegations are not that, you know, that the that Tetracheck, the contractor at issue here, negligently remediated the building. Their entire claim is that the Navy allegedly knew the building was contaminated and did not do any remediation at all. So the claim isn't about negligent supervision of the contractor. And we can see this if we look at paragraph 93 of their complaint. They say, quote, in about and after 1995-1996, the Navy, both directly and through its negligent supervision of Tetracheck EM and Tetracheck EM Inc., Tetracheck's predecessor corporation, PRC, made false, misleading and incomplete disclosures to the city and failed to warn the city and its employees related to related to and regarding the release of and use of hazardous substances at the subject leased property, end quote. And so isn't that the same as the 1983 block case where the U.S. Supreme Court found that the defects in the home were caused by negligent supervision of the home construction, not by the reliance on the supervision reports? No, Your Honor, because in that case, there was actually a construction right here. There's no remediation. There's nothing. This is this is their allegations are basically the Navy and its contractor knew of the contamination and then chose to affirmatively lie to the city and the county to get the property transferred. So even though the words negligent supervision are used here, it's it's just misrepresentation. There's nothing that was supervised. So there was no no cleanup, no remediation. There was no cleanup here. The whole claim is that we should have cleaned up and didn't. OK, thank you for clarifying that. You can talk about this CERCLA issue. Yes, Your Honor. On the on the second issue, CERCLA section 120 H1 does not suspend or limit the application of the misrepresentation exception. The Supreme Court addressed a similar argument in Neustadt, and there the argument was that the National Housing Act suspended the misrepresentation exception. The National Housing Act required the United States to conduct home appraisals to determine eligibility for mortgage insurance funds. And in that case, the plaintiff relied upon the home appraisal to purchase the home. The appraisal turned out to be incorrect and the plaintiff sued. On appeal, the Supreme Court held that the misrepresentation exception barred the claim. And in addressing the argument that the National Housing Act suspended the misrepresentation exception, the Supreme Court noted that there is nothing in the language of the National Housing Act that indicated the misrepresentation exception was supposed to be suspended or limited in any way. And Congress was presumably aware of the FTCA when it enacted the National Housing Act. The same is true here of CERCLA. There's no language in CERCLA that indicates the FTCA was supposed to be limited or that the misrepresentation exception was supposed to be suspended. What is the test here? I mean, does there need to be something in the statute that's specific? Or are you acknowledging that, you know, one could read the statute and sort of infer it? It's just that not that inference is not permissible here. Well, based on a rule of statutory construction, all laws should be given their fullest effect. So we should be given each giving each of these statutes their full effect. So unless the statutes themselves are irreconcilable or there is some explicit language in the statute that says, you know, we're amending the Federal Tort Claim Act so that it doesn't apply in this case, then yes, both statutes need to be applied. And here it is. I don't know. I don't know. The Supreme Court has told us there needs to be a clear statement. I mean, that may be correct. I just don't know that there's any law that currently says that. Well, it's a rule of statutory construction, Your Honor. We must assume or we must give effect to the laws that Congress has passed. And here we can give effect to all the words or all the laws Congress has passed by applying CERCLA, which required in this case the Navy to issue the mandatory notice about the substances that were on the property. And we can also apply the Federal Tort Claims Act, which has a misrepresentation exception so that there's no waiver of sovereign immunity for a tort claim. That doesn't eliminate the issue of a potential CERCLA claim or CERCLA remediation. CERCLA doesn't have a private right of action. Excuse me, Your Honor. CERCLA doesn't provide a private right of action. No, not in tort. For these reasons, Your Honor, we ask that you affirm the district court's decision. This court has applied the misrepresentation exception on multiple occasions to cases of third party reliance. And there's nothing in the CERCLA statute that would indicate that the FDCA is suspended or limited in any way. So your argument is that in trying to see if there was a waiver of sovereign immunity or whether the exception applies, we don't have to rely solely on some language in Newstat that suggests, you know, the strength of the word, whether there's a warranty or guarantee of accuracy. That's maybe one factor, but it's not the only factor. Yes, Your Honor, I think what. Because the language here in the statute CERCLA is stronger than what was in Newstat or Zurn. It seems like the government does guarantee that certain accuracy of the statements. So your position is that may be one factor, but that's not the dispositive factor. Well, yes, Your Honor, in this case, the statute does have a very clear disclosure requirement, but that doesn't interfere with the application of the Federal Tort Claims Act either. Both laws can be given their full effect. If Your Honors have no further questions. Thank you. Thank you. Your Honors, I'd first like to address whether we can see that the claims are grounded in misrepresentation. I think there's an ambiguity. A statement can be a misrepresentation, a false statement. But that's different from saying that a claim is one that meets the legal elements of a claim of misrepresentation. And so while we very explicitly do allege that there are false statements that go to the core of our claims and of the tort at issue, we absolutely do not concede that any of the causes of action state the legal elements of a claim for misrepresentation. And that's not just a matter of style. So the arising out of language really focuses on not how is this claim titled, what is the header, but rather what is the true gravamen of that action. Here, the gravamen of the action is not one that includes the reliance by the plaintiffs, which is an essential element of misrepresentation. So I just wanted to be clear about what it is and it's not that I'm conceding here. Secondly, the government argued that each of the First Circuit, the Fifth Circuit and the Tenth Circuit opinions were not, if I understood the argument correctly, were not really on point addressing this question about whether the first party reliance is an essential element in order for the misrepresentation exception of the FTCA to apply. But to the contrary, each of those cases explicitly stated that that was an essential element. So Jimenez, out of the First Circuit, said the requirement that the plaintiff himself has relied upon the false information makes sense if one sees the traditional tort as protecting the person's interest in obtaining true information when making up his mind about an important matter. At page four, it was that case is very much on point. Same with Sarawak Partnership out of the Fifth Circuit. That case expressly stated the essence of an action for misrepresentation is that the communique is the communication of misinformation on which the recipient relies. And there it was quoting, at page 571, it was quoting the Block v. Neal case, which Your Honor, Judge Navarro brought up. And likewise, the Tenth Circuit, in a state of trend to do, stated that reliance is an essential component of a negligent misrepresentation claim at page 855. So each of those cases is not glancingly discussing this, but rather they each pivot on the question of whether or not there is first party reliance or not. And in the Ninth Circuit, we don't have any case law that grapples with that issue. So we believe this would be a matter of first impression for this court. And if the court goes the other way, which it obviously can do, it would create a circuit split. But we think the reasoning of the First, Fifth, and Tenth Circuits are sound reasoning that are grounded in the core traditional meaning of that misrepresentation exception. Assuming that we require direct reliance for the misrepresentation exception to apply, I mean, close to it in the complaint, the complaint repeatedly says the SFPD, in reliance of the misrepresentations by the Navy, did this, subleased, et cetera. So isn't that pretty close to it? I mean, SFPD, when it negotiated and relied on the Navy's misrepresentations, presumably was acting on behalf of its employees. I think that's a really important distinction, that it was not acting on behalf of its employees. In other words, if we had a situation where the plaintiffs relied through an agent, even indirectly, but it was their reliance through somebody else. For example, in the medical context where somebody relies through a learned intermediary, the physician, in that context, that would be the tort claim of misrepresentation. But here, we don't have reliance by the plaintiff, direct or indirect. The city of San Francisco was not acting on behalf of its employees. Rather, it was acting in engaging in a property transaction as part of a bigger contractual purchase deal, that it was leasing out some of that land initially. And that led to, and foreseeably led to, the people who would be placed on that land being physically harmed. But they were not relying on that misrepresentation any more than the person injured by the vehicle that goes through the red light is relying on, you know, the best drivers relying on their behalf. But wouldn't employees presumably rely on their employer in terms of facility, that it's safe? I don't think individuals themselves would, that's just, I think, assumption, presumption that the employees rely on their employers and their, for the safety of the workplace. I think they don't have any agency in the decision. In other words, they're not making any decisions. The traditional tort usually is related to financial decision making. These plaintiffs are not making any decisions at all, so they're not relying on anybody for anything. Rather, they are, in terms of a misrepresentation, they're not receiving information and making decisions directly or indirectly based on that information. Let me just ask, at the top of your rebuttal argument, I mean, you're arguing that the misrepresentation exception doesn't apply, but you nonetheless are bringing claims, you know, state law claims for misrepresentation. So, I mean, if you're, is there some possible dissonance here between these arguments? In other words, if you succeed in getting out of the FTCA exception, are you nonetheless bringing a cognizable claim for misrepresentation in the first place? I think that perhaps any express claims for misrepresentation should fail, you know, under state law claims for misrepresentation. But the complaint, the gravamen of our complaint is, first, there's no allegation of reliance by the plaintiffs. And we're, the main complaint is about a property transaction that puts the plaintiffs there and results in their physical injury. So, I think that would be an open question, whether this rule would foreclose that particular, you know, claim for, with respect to the state  And then, turning to the CERCLA. Yeah, if you could wrap up on your final point. Yes. That under CERCLA, we agree it's not just one factor, Your Honors. It's, it's a, it's an array of factors, but all of them are aimed at the essential question of whether or not Congress recognized a specific duty. Here, the language is strong, recognizing that it did. So, for all of these reasons, the misrepresentation exception does not apply. And we would ask the court to reverse the decision. Thank you. Great. Thank you both for the very helpful argument. The case has been submitted.
judges: LEE, BRESS, Navarro